UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITA JOHNSON O/B/O
A.L.M., A MINOR,

                                     Case No. 2:15-cv-11031

          Plaintiff,         District Judge Arthur J. Tarnow
                                     Magistrate Judge Anthony P. Patti

v.

COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.
_____/

### RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14)

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment, **DENY** Plaintiff's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.    REPORT**

       Plaintiff, Lita Johnson on behalf of minor daughter A.L.M., brings this

action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of

the Commissioner of Social Security  ("Commissioner") denying her application

for supplemental security income child disability.  Plaintiff is proceeding without

the assistance of counsel.  This matter is before the United States Magistrate Judge

for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 14), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15), and the administrative record (DE 11).

### A.   Background

On December 27, 2011, Plaintiff protectively filed an application for supplemental security income on behalf of A.L.M., alleging that A.L.M. has been disabled since December 1, 2011.  (R. at 10.)  Plaintiff's application was denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ"). ALJ Henry Perez, Jr., held a hearing on September 13, 2013 and subsequently determined that A.L.M. was not disabled within the meaning of the Social Security Act.  (R. at 10-22.)   On January 14, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Perez's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action on behalf of her minor daughter.

### B.   The Administrative Record

On December 15, 2011, A.L.M.'s school implemented an Individualized Education Program ("IEP") on her behalf.  (R. at 120-124.)  She was assessed as having a specific learning disability and described as experiencing "significant academic difficulty."  (R. at 120-21.)  The school implemented accommodations,

including shortened assignments and tests, extended time to complete assignments and tests, and alternate test locations.  (R. at 121.)

A.L.M. presented to her pediatrician on January 5, 2012.  (R. at 125-135.) Her physical reports were unremarkable.  According to Plaintiff, A.L.M. ate breakfast every day, did well in school, had one or more close friends, seemed rested when she awoke, and handled stress, anger, and frustration appropriately. (R. at 129.)  Plaintiff reported, however, that A.L.M. had issues with hyperactivity. (R. at 134.)

On May 7, 2012, A.L.M.'s third grade teacher, Ms. Meva, completed a teacher questionnaire.  Ms. Meva opined that A.L.M.'s reading, writing, and math skills were below grade level.  She also indicated that A.L.M. was impaired in all functional domains other than "moving about and manipulating objects" and "health and physical well-being."  (R. at 90-97.)

Plaintiff completed a report of A.L.M.'s daily activities on May 11, 2012. (R. at 98-101.)  She noted that A.L.M. handled her own hygiene, did homework, and read for one hour every day.  (R. at 98.)  According to Plaintiff, A.L.M.'s teachers described her as disrespectful.  (Id.)  She indicated that A.L.M. was responsible for daily chores that she completed with "help and redirecting."  (R. at 99.)

On July 12, 2012, A.L.M. underwent a consultative examination with Nick Boneff, Ph.D.  (R. at 140-43.)  Dr. Boneff indicated that A.L.M. was able to make and keep friends, dress herself, and do homework. (R. at 141.)  He described her as verbally productive and articulate and noted that she had strong intact cognitive functioning.  (R. at 143.)  Finally, he noted that there was "not enough evidence . . . to warrant a diagnosis of ADHD or learning disability."  (Id.)

On August 9, 2012, State Agency reviewer Daniel Blake, Ph.D., opined that A.L.M. had less than marked impairments in all functional domains except health and physical well-being, in which she had no limitation.  (R. at 41-42.)  Dr. Blake concluded that A.L.M. had some limitations in her ability to function, but that those limitations were not severe enough to be disabling.  (R. at 43.)

A.L.M.'s school updated her IEP on October 2, 2013.  (R. at 145-153.)  Again, she was assessed as having a specific learning disability.  (R. at 145.)  She was described as friendly and helpful, but with a learning disability in the areas of basic reading, reading comprehension, written expression, and math calculation.  (R. at 146.)  The IEP noted that A.L.M. would benefit from resource room support because she needed a smaller group and direct instructions to narrow her deficits.  (Id.)

### C.    Hearing Testimony

At the September 13, 2013 administrative hearing, Plaintiff and the ten-year-old A.L.M. provided testimony.  The ALJ first confirmed that Plaintiff did not wish to seek counsel to represent A.L.M., and Plaintiff indicated that she would like to proceed without the assistance of counsel.  (R. at 27.)  A.L.M. testified that she was born on March 24, 2003, was four feet, six inches tall, and weighed approximately 96 pounds.  (R. at 29.)  A.L.M. noted that she was in the fifth grade at the time of the hearing.  A.L.M. testified that she followed her teachers' instructions and rules.  (R. at 31.)  A.L.M. noted that she got along with her teachers, had friends at school, and got along with her classmates "sometimes."  (R. at 31-32.)  A.L.M. explained that she read at home, played video games, and used a telephone.  (R. at 32-33.)

Plaintiff testified that she lived with A.L.M. and her brother.  (R. at 33-34.)  She noted that she was not in a relationship with A.L.M.'s father, but that he remained active in A.L.M.'s life.  (R. at 34.)  She explained that A.L.M. was in a "resource program," when asked if she was in special education.  (Id.)  Plaintiff indicated that A.L.M.'s reading and writing were "low, below average."  (R. at 30.)  She noted that A.L.M. received one-on-one help at school and had improved in her reading.  (R. at 35.)  She clarified that A.L.M. had not been diagnosed with ADHD, but that it was mentioned in her 2011 IEP.  (R. at 30.)  Plaintiff explained

that A.L.M. had a learning disability that impacted her ability to read and her comprehension level. (Id.) She noted that A.L.M. was not receiving medical treatment for her difficulties. (R. at 31.) According to Plaintiff, A.L.M. indicated that she could express her needs to her teachers, but noted that her work was not reflective of that ability.

Plaintiff explained that A.L.M. participated in physical activities, but that her attention span would get "a little aggressive," such as too much horse-playing and not enough following directions. (R. at 31.) Plaintiff also testified that A.L.M. participated in choir at school. (R. at 32.) She noted that A.L.M. completed her homework "with direction," and was able to communicate her needs at home. Plaintiff indicated that A.L.M. could feed herself, bathe herself, and dress herself "with direction." (R. at 34.) She testified that A.L.M. had chores, including cleaning her room, the bathroom, and the kitchen, but noted that she seldom completed those chores. (R. at 35.)

### D.  THE ADMINISTRATIVE DECISION

#### 1.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The

Commissioner determines whether a child is disabled by analyzing three sequential

steps: first, the child must not be engaged in "substantial gainful activity;" second,

the child must have a "severe" impairment;[1] and third, the severe impairment must

meet, medically equal, or functionally equal one of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B"

criteria of the impairment.  In addition, to be found disabled based on meeting a

listed impairment, the claimant must exhibit all the elements of the listing.  *See*

*Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  If a

child's impairment does not meet a listed impairment, the impairment may be

medically or functionally equal in severity and duration to the medical criteria of a

listed impairment.  20 C.F.R. § 416.926a.

      To determine functional equivalence, there are six "domains" that an ALJ

considers: 1) acquiring and using information; 2) attending and completing tasks;

3) interacting and relating with others; 4) moving about and manipulating objects;

5) caring for oneself; and 6) health and physical well-being.  20 C.F.R. § 416.926a.

Functional equivalence is demonstrated by the existence of an "extreme" limitation

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or
mental ability to do basic work activities." §§ 1520(c); 920(c).

in one of the six domains, or a "marked" limitation in two of the six.  20 C.F.R. §

4156.926a(d).  An extreme limitation is one that interferes "very seriously" with

these abilities.  If the impairment or combination of impairments does not meet or

medically or functionally equal a listing, the child is not disabled.  20 C.F.R. §

416.924(a).

### 2.   The ALJ's Decision

Applying this framework, the ALJ concluded that A.L.M. was not disabled.

At Step 1, he determined that A.L.M. had not engaged in substantial gainful

activity since December 27, 2011 and was a school-aged child.  (R. at 13.)

At Step 2, the ALJ identified the severe impairment of specific learning

disability.  (R. at 13.)

At Step 3, the ALJ found that A.L.M.'s severe impairment did not meet or

medically equaled a listed impairment.  (R. at 13.)  He further found A.L.M's

impairment did not functionally equal a listed impairment.  (R. at 13.)  In making

this determination, the ALJ determined that A.L.M. had less than marked

limitations in the domains of: 1) acquiring and using information; 2) attending and

completing tasks; 3) interacting and relating with others; 4) moving about and

manipulating objects; and 5) caring for herself.  (R. at 16-21.)  He concluded that

A.L.M. had no limitation in the domain of health and physical well-being.  (R. at

21.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

### 1.    Plaintiff's Standing and Non-Attorney Representation of a Minor

Plaintiff is proceeding without the assistance of counsel in this action, and brings the case on behalf of her minor child, A.L.M.  As a preliminary matter, the Court must consider whether Plaintiff has standing to bring this action *pro se* on behalf of her child.  *See Adarand v. Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001) (the Court is obliged to examine standing *sua sponte*).  Generally, parties in federal court "may plead and conduct their own cases personally or by counsel . . . ."  28 U.S.C. § 1654.  The statute "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake."  *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).  Likewise, "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative."  *Id.*  The reason for such a prohibition is to "'protect[] the rights of those before the court' by preventing ill-equipped laypersons from squandering the rights of the party he purports to represent."  *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (quoting *Myers v. Loudon Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005)).

However, this rule "has been relaxed in the narrow field of Social Security Appeals brought by a minor child's parent."  *Tyler v. Comm'r of Soc. Sec.*, No.

1:09-cv-686, 2010 WL 3398763, at *4 (W.D. Mich. Aug. 4, 2010); *see also Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[P]arents may bring claims *pro se* on behalf of their children in an effort to secure social security benefits."). Courts have reasoned that the minor child's parent has a personal stake in the litigation, as the one who is responsible for the minor's expenses. *Harris v. Apfel*, 209 F.3d 413, 416-17 (5th Cir. 2000). Further, "'prohibiting non-attorney parents from proceeding *pro se* in appeals from the administrative SSI decisions, on behalf of a minor child, would jeopardize seriously the child's statutory right to judicial review under 42 U.S.C. § 405(g).'" *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1279, 1301 (10th Cir. 2011) (quoting *Harris*, 209 F.3d at 417). Accordingly, this case is properly brought by Plaintiff on behalf of her minor child.

## 2. Plaintiff's Claims of Error

Here, Plaintiff asserts that the ALJ committed reversible error because A.L.M. has several disabilities that impair her ability to learn, including ADHD and immune thrombocytopenic purpura ("ITP").[2] As support, she includes an April 10, 2015 letter from Nakia W. Williams, M.D., who indicates that A.L.M.

---

[2] The National Institutes of Health define ITP as "a bleeding disorder in which the immune system destroys platelets, which are necessary for normal blood clotting. People with the disease have too few platelets in the blood." U.S. National Library of Medicine, Medical Encyclopedia, available at https://www.nlm.nih.gov/medlineplus/ency/article/000535.htm (last accessed on June 22, 2016).

exhibited signs of ADHD.  She also provides a June 2, 2014 IEP report.  The

Commissioner opposes the motion, asserting that the ALJ's conclusions are

supported by substantial evidence.  As Plaintiff is proceeding *pro se*, the Court will

limit its consideration to those matters arguably presented by Plaintiff's motion and

a consideration of the administrative record for any obvious errors in the ALJ's

conclusions.  *See Brinkley v. Comm'r of Soc. Sec.*, No. 14-13560, 2015 WL

1637598, at *2-3 (E.D. Mich. Apr. 13, 2015) (Michelson, J., adopting report and

recommendation of Patti, M.J.) (where Plaintiff is *pro se*, the Court may "review[]

the administrative record for obvious errors in order to affirm the Commissioner's

conclusions . . . ." (internal citations and quotations omitted)).

### a.     New and Material Evidence

In her motion, Plaintiff provides two documents that post-date the ALJ's

October 24, 2013 decision.  First, she attaches an April 10, 2015 letter from

pediatrician Nakia V. Williams, M.D., stating that A.L.M. was seen on April 4,

2015 with manifestations of ITP.  (DE 14 at 3.)  Dr. Williams also notes that

A.L.M. exhibited "signs of ADHD and perhaps a learning disorder."  (Id.)  Second,

Plaintiff provides an IEP dated June 2, 2014.  (Id. at 5-6.)  Neither of these items

appeared in the administrative record below.

To the extent Plaintiff is asserting that the matter should be remanded for

consideration of this new evidence, her argument is unavailing. The Court can

remand for further administrative proceedings pursuant to Sentence Six "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996). For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)).

A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "Evidence of a disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004); *see also Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio Jan. 18, 2011) ("Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where . . . it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date.").

Finally, Plaintiff must also demonstrate good cause by "giv[ing] a valid reason for his [or her] failure to obtain evidence prior to the hearing." *Oliver v.*

*Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (emphasis added); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.").

Here, the new evidence fails the materiality test.  First, the note from Dr. Williams only indicates that A.L.M. developed the condition of ITP sometime after the ALJ's decision.  It does not indicate what impact, if any, the ITP would have on any of A.L.M.'s functional domains.  Additionally, Dr. Williams does not diagnose Plaintiff with ADHD, but merely reiterates what was in the record before the ALJ: that A.L.M. potentially exhibits signs of ADHD.  (*See, e.g.*, R. at 30-31 and 143.)  Indeed, Plaintiff admits that, "she hasn't been diagnosed with that."  (R. at 30.)

Similarly, the June 2, 2014 IEP does not differ materially from the October 2, 2013 report that was before the ALJ.  (R. at 145-48.)  In fact, the updated report, while acknowledging that A.L.M. was "significantly behind her peers," also indicates that she had made "gains on district assessments," was "able to read chapter books and complete book reports," and participated in class.  (DE 14 at 5.)  She was assessed as reading at the third grade level.  This seems to represent an improvement over the last IEP, in which she is described as being at a first grade reading level.  (R. at 143.)  As such, the report is consistent with Plaintiff's

testimony that A.L.M.'s reading skills had improved after the implementation of her IEP.  (R. at 35.)  In both reports, her primary disability is designated as specific learning disability, which is consistent with the ALJ's finding at Step 2.  The ALJ had all of this information before him and considered it in his opinion.  (*See* R. at 14.)

In short, the new information provided by Plaintiff falls well short of establishing a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.  Plaintiff's attempt to introduce this evidence in the current appeal is, therefore, unavailing.

### b.     Severe Impairments at Step 2

As best as the undersigned can discern, Plaintiff asserts that the ALJ erred by not considering ADHD and ITP to be severe impairments at Step 2.  To be considered a "severe" impairment at Step 2, the claimant must have a "medically determinable impairment," that causes more than a "slight abnormality."  20 C.F.R. § 416.924 (c).  An impairment is "medically determinable" when it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); *see also* S.S.R. 96-4p, 1996 WL 374187, at *1 (July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental

impairment' and no symptom by itself can establish the existence of such an impairment.").

Here, there is no indication, either in the record that was before the ALJ or in the new evidence that Plaintiff attempts to introduce, that A.L.M.'s ADHD and ITP are medically determinable impairments that cause more than a slight abnormality in her functional abilities. A.L.M. has never been diagnosed with ADHD and the few reports of ADHD-like symptoms in the record are insufficient to establish a medically determinable impairment. Likewise, the only mention of ITP occurs in evidence obtained well after the ALJ's determination and does not provide any indication that the condition causes more than a slight abnormality in A.L.M.'s functional domains. Further, the ALJ did not even *have* this information at the time he made his decision and Plaintiff has not established that the evidence is material. Accordingly, the ALJ committed no error at Step 2.

### c.    ALJ's Analysis of A.L.M.'s Functional Domains

Finally, I find no obvious error in the ALJ's analysis of A.L.M.'s severe impairment of specific learning disability. Specifically, while the ALJ determined at Step 2 that A.L.M.'s specific learning disability was a severe impairment, he further concluded that the impairment did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.) In making this determination, the ALJ considered the

17

testimony of Plaintiff and A.L.M., the October 2, 2013 IEP, a January 5, 2012

report from a pediatrician indicating that Plaintiff reported A.L.M.'s hyperactivity

in school (R. at 134), the consultative examination of Dr. N. Boneff, the report of

State Agency consultant Dr. Daniel Blake, and the teacher questionnaire submitted

by A.L.M's third grade teacher.

Addressing each functional domain in turn, substantial evidence supports the

ALJ's analysis and conclusion.

### i.      Acquiring and Using Information

In this domain, an assessment is made as to how well a child acquires or

learns information, and how well the child uses the information he or she has

learned.  20 C.F.R. § 416.926a(g).  The ALJ concluded that A.L.M. had less than

marked limitation in acquiring and using information because of her diagnosis of

specific learning disability.  However, he pointed out that A.L.M. has never

repeated a grade and that her mother's testimony indicated that her reading ability

had improved.  Further, Dr. Boneff opined that A.L.M.'s thoughts were "generally

logical and goal directed," that she read frequently, was "verbally productive and

articulate," and that her cognitive functioning was strong and intact.  (R. at 142-

43.)  Moreover, the ALJ's conclusion is consistent with the opinion of the State

Agency consultant who opined that A.L.M. had "less than marked" limitations in

all functional domains, other than health and physical well-being, in which she had

18

no limitation.  (R. at 41-42.)  The ALJ afforded this opinion significant weight

because of its consistency with the record.  (R. at 16.)  The ALJ pointed out that

the only intervention A.L.M. received was through the resource room, and that she

did not receive assistance or treatment outside of school.  These reports are all

inconsistent with the examples of limited functioning in this domain.  20 C.F.R. §

416.926a(g)(3).  Accordingly, substantial evidence supports the ALJ's conclusions

in this domain.

### ii.      Attending and Completing Tasks

This domain considers how well the child is able to focus and maintain

attention and how well the child carries through and finishes activities.  20 C.F.R.

§ 416.926a(h).  Here, the ALJ concluded that A.L.M. had a less than marked

limitation.  The ALJ noted that A.L.M.'s IEP referred to her short attention span

and difficulty focusing.  (R. at 18.)  He also pointed out, however, that A.L.M. had

not been diagnosed with ADHD and is able to attend and complete tasks, as

evidenced by her improved reading skills.  He also noted A.L.M.'s reported

activities of daily living, including reading and playing video games, which require

a degree of focus and attention.  There is no error in the ALJ's analysis of this

domain.

### iii.    Interacting and Relating with Others

This domain considers how well a child initiates and sustains emotional connections with others, develops and uses language, cooperates, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(i).  The ALJ concluded that A.L.M. had a less than marked limitation in this domain and the record supports that conclusion.  For example, A.L.M.'s own testimony indicated that she got along with her parents and had close friendships.  (R. at 31-32.)  A.L.M. made consistent statements at the July 2012 consultative examination, noting that she was able to "make and keep friends" and that she got along with her mother, father, and sibling "most times." (R. at 141.)  Her mother confirmed that A.L.M. gets along well with both of her parents and that any arguing with her brother is just typical sibling rivalry.  (R. at 33-34.)  Further, although A.L.M. was suspended once for fighting, there is nothing in the record, including her IEP, to indicate that this was a consistent behavioral problem.  There is no error in the ALJ's analysis on this domain.

### iv.    Moving About and Manipulating Objects

This domain considers the child's gross and fine motor skills.  20 C.F.R. § 416.926a(j).  The ALJ concluded that A.L.M. had a less than marked impairment in this area due to her "fidgety nature."  (R. at 20.)  However, he also pointed to the fact that she played baseball and softball, played video games, and dressed herself,

all of which indicate that her fidgety nature does not markedly impair her gross or fine motor skills.  This is consistent with the regulations, which point out that a school-aged child should "enjoy a variety of physical activities" including "catching and hitting balls in informal play or organized sports."  Id. at § 416.926a(j)(iv).  Nothing in the record indicates that A.L.M. had further impairment in this area than that opined by the ALJ.

### v.      Caring for Self

This domain considers how well the child maintains a healthy emotional and physical state.  20 C.F.R. § 416.926a(k).  The ALJ concluded that A.L.M. had a less than marked impairment in this area.  He pointed out that while A.L.M. had trouble effectively managing frustration, she was able to function in the classroom, did not engage in developmentally regressive behavior, and was capable of feeding, dressing, and bathing herself with some reminders from her mother.  (R. at 21.)  This is consistent with the regulations, which indicate that school-age children should be independent in most day-to-day activities, such as dressing and bathing themselves, although they may "still need to be reminded sometimes to do these routinely."  Id. at 416.926a(k)(iv).  A review of the record does not reveal that A.L.M. is more limited in this area than what is described in the ALJ's opinion.

### vi.    Health and Physical Well-Being.

This domain addresses how recurrent illness, medication side effects, and the need for ongoing treatment affect the child's health and sense of physical well-being.  20 C.F.R. § 416.926a(l).  The ALJ properly found no limitation in this domain.  The record demonstrates that A.L.M. has not been diagnosed with or treated for any medical condition, other than ITP as discussed above.[3]  Records from her pediatrician reveal normal medical results and describe A.L.M. as a "well child."  (R. at 134.)  There is nothing in the record to demonstrate that A.L.M. has any limitation in this domain.

### G.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

---

[3] The April 10, 2015 letter from Dr. Williams does indicate a diagnosis of ITP. (DE 14 at 3.)  However, as addressed above, this document was *not* part of the record before the ALJ and Plaintiff has not demonstrated its materiality.

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 23, 2016           s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti